UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | BANKRUPTCY NO. |
| MARSHALL W. THOMAS, SR.<br>  Debtor | 04-12746<br>SECTION "B" |
| **BARBARA F. THOMAS**<br>  Plaintiff | CHAPTER 7 |
| **Versus** | **ADVERSARY NO.** |
| **MARSHALL W. THOMAS, SR.**<br>  Defendant | 04-1091 |

## MEMORANDUM OPINION

This matter came before the court on December 2, 2004 as a trial on the complaint of Barbara F. Thomas objecting to the dischargeability of a debt pursuant to 11 U.S.C. §§523(a)(5), (15). For the reasons assigned, the court holds that the Fleet credit card debt and the equalization payment provided for in the judgment of the state district court in connection with the parties divorce proceedings constitutes a property division and not a support obligation under §523(a)(5), and that the obligations are not subject to discharge under 11 U.S.C. §523(a)(15).

I. **Background Facts**.

Barbara F. Thomas is the former spouse of the debtor, Marshall W. Thomas, Sr. The couple filed divorce proceedings, and on June 3, 2003, the parties entered into certain stipulations in connection with the partition of the couple's former community property. Among other things, they divided the existing community assets, and agreed that a reimbursement of $11,267.87 was due to Barbara Thomas and a reimbursement of $9,026.00 to the debtor.[1] On April 1, 2004, the state court entered a judgment partitioning the community. The judgment, among other things, required that the debtor pay the balance of $9,441.27 due on a Fleet credit card, that Barbara Thomas pay the balance of $6,014.73 on the community debt due on their Credit Union Visa, and that the debtor make an equalizing payment of $1,930.08 to Barbara Thomas, payable in $100 monthly payments due on the 15th of each month.[2]

On April 15, 2004, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Among the debts listed on the debtor's schedules are $1,930.08 owed under the state court judgment to Barbara Thomas and the Fleet credit card debt of $9,382.43. The schedules also list Barbara Thomas as a

---

[1] Exhibit 1.

[2] Exhibit 2.

codebtor on the Fleet credit card debt.[3]

On May 13, 2004, Barbara Thomas filed a compliant objecting to the discharge of the indebtedness owed to her by the debtor under §§523(a)(5) and (15) of the Bankruptcy Code, asserting that both the Fleet credit card debt and the equalizing payment ordered by the state court are not subject to discharge.

**B. Applicable Law.**

**A. Section 523(a)(5).**

Section 523(a)(5) exempts from discharge a debt:

> (5)  to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> . . .
>
> (B)  such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[4]

The initial question for the court is whether either the obligation to pay the Fleet debt or the equalization payment constitutes a nondischargeable alimony,

---

[3] Pl. 1.

[4] 11 U.S.C. § 523(a)(5).

maintenance or support provision as provided under §523(a)(5), or instead is a division of property, falling within the ambit of §523(a)(15).

The creditor bears the burden of proving by a preponderance of the evidence that the obligations are nondischargeable support obligations.[5] Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.[6]

A determination of whether a division of marital property contained in a divorce settlement agreement is nondischargeable alimony or support under §523(a)(5) involves the evaluation of the parties intent at the time the agreement was established.[7] In the case of *In re Joseph*,[8] the Fifth Cicuit set forth a nonexclusive list of factors that the bankruptcy court should review in deciding whether a Texas divorce obligation constituted alimony, maintenance, or support. These factors include: the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their

---

[5] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

[6] *Id*.

[7] *In re Davidson*, 947 F.2d 1294, 1296-97 (5th Cir. 1991).

[8] 16 F.3d 86 (5th Cir. 1994).

probable future financial needs, and the benefits each party would have received had the marriage continued. These factors are not helpful in this case because little evidence was introduced as to the factors as they existed at the time of the divorce, and the factors in the *Joseph* case were developed to apply to Texas divorce awards, which did not at the time allow for the award of alimony.[9]

Here, the state court judgment awarding the payments was entered in connection with the partition of the couple's former community property. The parties had stipulated to the division of assets, including the value of the assets, and the reimbursements owed to each party.[10] The judgment partitioned additional assets not named in the stipulation, partitioned liability for two credit card obligations, and then made an "equalizing payment" to Barbara Thomas. Generally, alimony/support payments terminate upon death, and are subject to modification upon a subsequent change of circumstance of the parties.[11] Additionally, in the context of a §522(d)(10)(D) exemption, the Fifth Circuit has determined that a payment which equalizes the division of the parties marital

---

[9] *In re Joseph*, 16 F.3d 86, 87 (5th Cir. 1994).

[10] Ex. 1. Barbara Thomas received $4,490 in assets and the debtor received $8,000 in assets.

[11] *In re Evert*, 342 F.3d 358 (5th Cir. 2003)(section 522(d)(10)(D) exemption).

property is a property division and not support.[12]

The court concludes that the Fleet obligation and the equalization payment are not nondischargeable alimony or support under §523(a)(5), but instead constitute a property division. At trial, Barbara Thomas testified that the debtor is obligated to pay a separate child support payment to her of $564 per month.[13] Additionally, the intent of the parties in entering the stipulation was the division of marital property. The equalization payment, to the extent intent can be gleaned from the documents, is to equalize the division of assets and liabilities, and not as support for either Barbara Thomas or the couple's child. Additionally, the judgment allocating the Fleet credit card debt is in the nature of a property settlement, and not a support obligation. The allocation of the Fleet debt was not intended to award support to Ms. Thomas, but to partition existing community debt. For the foregoing reasons, the court holds that the Fleet debt and the equalization payment do not fall under §523(a)(5), but do fall under §523(a)(15).

### B. Section 523(a)(15).

The Bankruptcy Reform Act of 1994 created Section 523(a)(15) to except from discharge certain obligations in the nature of marital property settlements that

---

[12] *Id.*

[13] *See also* Pl. 29, no. 5.

are not in the nature of alimony or support.[14]  Congress added Section 523(a)(15) "in an attempt to lessen the chance that a divorce obligee's claims might slip through Section 523(a)(5)'s cracks and be discharged unjustly."[15]

Section 523(a)(15) of the Bankruptcy Code, 11 U.S.C. § 523(a)(15), excepts from discharge a debt:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

The creditor bears the burden of proof by a preponderance of the evidence with respect to most dischargeability actions.[16]  In a §523(a)(15) action, the

---

[14] *In re Taylor*, 191 B.R. 760, 764 (Bankr. N.D. Ill. 1996).

[15] *In re Dressler*, 194 B.R. 290, 300 (Bankr. D. R.I. 1996).

[16] *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991).

creditor has the initial burden of showing that the section is applicable to the debt.[17] Upon such a showing, the burden of proof shifts to the debtor who must prove either of the two prongs under §523(a)(15).[18]

Section 523(a)(15) applies to "any debt . . . [not in the nature of alimony or child support] that is incurred in the course of a divorce or separation."[19] Section 523(a)(15) serves to make all debts related to a divorce or separation subject to a presumption of nondischargeability under §523(a)(15)(A) or (B).[20]

If the Fleet and equalization obligations are not alimony or child support under §523(a)(5), then they constitute debts incurred by the debtor in connection with a divorce. Thus, Ms. Thomas has met the initial burden of showing that §523(a)(15) is applicable to the debts. Therefore, in order for the Fleet and equalization debts to be discharged, the debtor must prove that either §523(a)(15)(A) or (15)(B) is applicable.

1. Section 523(a)(15)(A).

Under §523(a)(15)(A), in order for the debt to be discharged, the debtor

---

[17] *In re Gamble*, 143 F.3d 223, 226 (5th Cir. 1998).

[18] *In re Shea*, 221 B.R. 491, 499 (Bankr. D. Minn. 1998).

[19] *In re Gamble*, 143 F.3d 223, 225 (5th Cir. 1998).

[20] *Id.*; *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003).

must show that he lacks the ability to pay the debt from income or property that is not reasonably necessary for the support of the debtor, the debtor's family, or for the operation of the debtor's business. [21] In other words, the debtor must show that he is unable to "make reasonable payments on the debt from his disposable income."[22] The court considers the totality of the circumstances in its analysis of §523(a)(15)(A).[23] The relevant time for evaluating the debtor's ability to pay the debt is the date of the trial in the adversary proceeding, December 2, 2004 in this case.[24]

Considering the totality of the circumstances, the court concludes that the debtor has the ability to pay the equalization payment due to the debtor and the Fleet credit card debt. The equalization payment is in the amount of $1,930.08, payable in $100 monthly payments. The Fleet credit card debt has a balance of $9,382.43, with a minimum monthly payment of $212. The debtor's schedules I and J, reflecting the debtor's current income and expenditures, indicate that he has $1200 in net monthly income, and $983 in monthly expenses, and that income

---

[21] *Id*.

[22] *Gamble*, 143 F.3d at 226; *In re Whittaker*, 225 B.R. 131, 142 (Bankr. E.D. La. 1998).

[23] *Whittaker*, 225 B.R. at 143 (court considers any sources of supplemental income, the extent the debtor can control his income and the extent the debtor's expenses are self-imposed).

[24] *Whittaker*, 225 B.R. at 142 - 143; *In re Jodoin*, 209 B.R. 132 (9th Cir. BAP 1997).

exceeds his expenses by $217 per month.[25] A statement of the debtor's income and expenses submitted in connection with the trial shows net income of $2592 per month, and expenses of $2,249.69, leaving $342.31 available to pay the divorce-related obligations.

The debtor is currently living with his girlfriend, and does not have mortgage or rental payments for a home or apartment. If his living situation changed, then this additional expense would have to be borne by the debtor, making it difficult for him to pay any additional debts. However, the court is also aware that the debtor's bankruptcy schedules also indicate that the debtor has nonexempt assets, including $5000 as the value of his 1/5 interest in his mother's estate. The state court judgment also gives the debtor a credit for $6,500 as the stipulated value of a 1967 Camaro, but his bankruptcy schedules do not reflect the vehicle. The debtor testified that he gave the Camaro to his nephew on the nephew's birthday, and that he (the debtor) no longer owns the vehicle. Ms. Thomas testified that the debtor is not close to his nephew, and that the transfer is a sham because the debtor was seen driving the Camaro after the time of the

---

[25] The discrepancy between the debtor's income and expenditures as appear in his schedules and Exhibit 14 was unexplained. A copy of the debtor's bank account statements indicate that the debtor received $1858.43 in net payroll (child support is deducted from payroll) in August 2004, $1438.90 in September 2004 and $2877.42 in October 2004.

purported gift.  Although the court is not making a determination as to the value or ownership of the vehicle,[26] it strains credulity that the debtor would make such a grand gesture to a relative while his financial situation is so dire.   Although the debtor is unable to pay his creditors, he has removed from his estate its single most valuable asset, and the court therefore believes that the debtor's financial situation may not be as bleak as depicted in his schedules.

The debtor's future financial situation appears to be improving.  The debtor's statement of financial affairs indicates that he had $32,000 in gross wages for the year 2003.   His gross wages for 2004 appear to be in excess of that, approaching $39,744 for 2004.[27]  While he does not pay housing expenses, and supports another child at home, his list of expenses indicates nonrecurring expenses of $200 per month for attorney's fees, and that monthly income exceeds expenses by over $300 per month.  Considering the totality of the circumstances, the debtor has the ability to pay the indebtedness provided for in the April 1, 2004 judgment, and has not met his burden of proof under §523(a)(15)(A).

---

[26]  Ms. Thomas insisted that the Camaro's true value was $13,000 and that the $6,500 stipulated value was one-half of the true value of this restored, antique vehicle.  Ms. Thomas' last pleading filed with the court states that the vehicle is worth $32,000, but no evidence of the true value of the vehicle was offered.  *See* Pl. 29, paragraph 3.

[27]  Exhibit 14 [$3312 gross monthly wages x 12]

-11-

2. Section 523(a)(15)(B).

Under §523(a)(15)(B), the debtor must show that discharging the debt would result in a benefit to him that outweighs the detrimental consequences to the ex-spouse. In this analysis, the court considers "the totality of the circumstances, not just a comparison of the parties relative net worths."[28] Among the factors to be considered are:

1. The amount of debt involved, including all payment terms;
2. The current income of the debtor, objecting creditor and their respective spouses;
3. The current expenses of the debtor, objecting creditor and their respective spouses;
4. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;
5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;
6. The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;
7. The dependents of the debtor, objecting creditor and their respective spouses;
8. Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;
9. The amount of debt which has been or will be discharged in the debtor's bankruptcy;
10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and
11. Whether the parties have acted in good faith in the filing of the

---

[28] *Gamble*, 143 F.3d at 226.

bankruptcy and the litigation of the § 523(a)(15) issues.[29]

The amount of debt involved and the payment terms do not favor discharge of the debt. The equalization payment is in the total amount of $1903.08 and the Fleet obligation totals $9,441.27. These obligations are not large, and the debtor has the ability to pay the indebtedness from current income.

Although Ms. Thomas currently earns more gross monthly income than the debtor, she also has more expenses. She is employed as a personal care assistant to people with breathing disabilities, and has a gross income of approximately $37,312 in 2004, plus annual child support of $6,768. Her gross monthly income equals approximately $3,673.33, including child support, which she testified she sometimes does not receive. Her monthly expenses are over $4,471 per month, and exceed her monthly income.[30] Even deducting items such as entertainment ($275/mo.) and eating out ($425/mo.), her monthly expenses still exceed income.

Similarly, Ms. Thomas owns more assets than the debtor; however, she also has more liabilities. Ms. Thomas testified that she owns a home with an appraised value of $20,000 that is not encumbered by a mortgage. Even without a mortgage

---

[29] *In re Windom*, 207 B.R. 1017, 1023 (Bankr. W.D. Tenn. 1997), *citing In re Smither*, 194 B.R. at 111; *In re Carlisle*, 205 B.R. 812, 818 (Bankr. W.D. La. 1997).

[30] Exhibit 2.

or rental expense, she is still unable to meet her expenses on a monthly basis. Ms. Thomas also owns an expensive SUV, on which she makes $537 per month in payments. She explained at trial that the SUV is necessary for use in her occupation as a personal care assistant because she needs a vehicle large enough to accommodate her clients. Ms. Thomas also has a $10,000 IRA, however, she has been unable to borrow against the account. The debtor lacks assets; however, as discussed previously, he has given to a nephew a vehicle that represented his single most valuable asset.

Neither the debtor nor Ms. Thomas have extensive training or education, although both are employed in skilled jobs. Both testified to having health related problems, although Ms. Thomas' health problems posed the greatest potential future risk. Ms. Thomas testified that she suffers from hypertension, fluid around the heart and is overweight. She testified that once her COBRA benefits expire, she will be unable to obtain medical insurance because of her weight. Her dependant son is also obese, and suffers from migrane headaches. Ms. Thomas testified that she pays all the medical expenses of her son.

Both the debtor and Ms. Thomas support a dependant. Ms. Thomas receives child support payments from the debtor that help to defray this expense of supporting the son of her union with the debtor. It appears that the debtor's

-14-

dependant son of a marriage prior to his marriage to Ms. Thomas takes certain medications, including Concerta. The debtor is covered by medical insurance, which helps defray the medical expenses of his dependant. No testimony was offered showing that the debtor's medical insurance was in jeopardy or that the debtor was not insurable.

Since the divorce, the debtor's financial condition has improved, while Ms. Thomas' financial condition has worsened. Debtor's income has increased in the last year, while Ms. Thomas has moved to a lower paying job. Ms. Thomas' financial condition will become even more strained if medical insurance is not obtained, and she is forced to pay medical expenses in full in the future.

Considering the totality of the circumstances, the court concludes that the benefit to the debtor of discharging the indebtedness does not outweigh the detrimental consequences to his former wife, and the complaint objecting to the dischargeability of a debt is sustained.

New Orleans, Louisiana, January 20, 2005.

*J. A. Brown*
_____
Jerry A. Brown
U.S. Bankruptcy Judge